Joseph F. Hawkins, J.
Upon this writ of habeas corpus, at the request of the Mental Health Information Service certifying that the relator was indigent, counsel was assigned by the court. Thereafter upon the request of such assigned counsel, an independent psychiatrist was appointed by the court.
The question posed is simply whether the respondent may lawfully continue to.detain relator at the Harlem Valley State Hospital under article 35 of the Mental Hygiene Law — “ Admission of Alcoholics to Alcoholism Facilities.”
The court-assigned psychiatrist’s report notes that upon petitioner’s admission to the hospital, on July 27, 1971, a diagnosis of mental illness — schizophrenia, catatonic type, to be precise — was made. Apparently one year later after having shown “ improvement ” he was considered for<“ early release.” Thereafter, on two occasions when he had returned to his *809 mother’s home on a “ day pass ”, he resumed “ drinking ” and ‘ ‘ his mother had to return him to the hospital. ’ ’
The petitioner’s mother, the report continues, “thereafter does not want him home until his condition has been stabilized.” The psychiatrist’s report states that the relator is presently oriented in all spheres. Despite the efforts of the psychiatrist to persuade him otherwise, the petitioner insists that he “ does not intend to stop drinking,” and, further, that such conduct ‘ ‘ is legal and I have a right to drink. ’ ’ The patient, however, did indicate that he does not intend to ‘ ‘ drink much, but go to work and drink for relaxation in the evenings.”
The respondent’s authority to continue to detain the patient is founded on article 35 (§ 35.01 et seq.) of the Mental Hygiene Law. By chapter 251 of the Laws of 1972, effective on May 9, 1972, the former Mental Hygiene Law was repealed so as “ to enact a recodified mental hygiene law” and the said chapter thereby legislated a recodified Mental Hygiene Law.
The Mental Hygiene Law contains several varying definitions and criteria relating to alcoholism. Section 1.05 includes “ alcoholic ” within the definition of “mental disability.” In subdivision 14 of said section, an alcoholic is described as a person who “ chronically and habitually uses alcoholic beverages ” to such an extent that he cannot exercise self-control, or by virtue of such addiction “ endangers the health, safety or welfare of himself or others.” The very next subdivision then defines 1 ‘ alcoholism ” as “ any condition of abnormal behavior or illness resulting directly or indirectly from the chronic and habitual use of alcoholic beverages.”
The statutory definition of “ mental disability ” as set forth in subdivision 3 of section 1.05 equates alcoholism with ‘1 mental disability ”, and then proceeds to define mental disability as “ a mentally disabled person * * * who has a mental disability.”
In article 35 which promulgates the criteria for involuntary admission, the language defining ‘ ‘ in need of involuntary care and treatment ” as related to alcoholics is “ a person is in need of in-patient care and treatment in an alcoholism facility ” who is “ likely to cause serious harm to himself.” (§ 35.01).
Concededly there are many inherent and unavoidable difficulties in arriving at a legal definition of “ alcoholics to do so medically is much simpler. It appears to me that the statutory intent is to hospitalize involuntarily only those alcoholics who are demonstrably dangerous to themselves or to the community. Upon the submission and the hearing at bar, neither criterion has been established.
*810 It appears further that the relator’s mother has been given virtual “ veto power ” over her son’s discharge. The statutory intent, it seems quite clear, is that the hospital facilities provided by the State are to treat and cure alcoholics who are dangerous to themselves and to others; they are not substitutes for a rest home. Families cannot evade their responsibilities by shifting the entire burden to the State, thereby depriving truly mentally ill patients of hospital beds and needed medical care.
Parenthetically, I largely concur in the petitioner’s protestations that he has a “ legal right to drink ” if he restricts such pursuit to his home and in the evenings after returning from a day’s work. To hold otherwise would be to render a distressingly large portion of the population of the State subject to involuntary hospitalization.
Significantly, the return to the writ by the respondent institution is on a printed form last revised in “ Feb. 1946 ”, and is totally devoid of any facts or allegations, save that the relator ‘ ‘ remains mentally ill, ’ ’ and that he is being retained by virtue of a 12-month retention order which is to expire in July of this year. This surely is a most tenuous base upon which to deprive a man of his liberty.
Accordingly, the relator’s writ is granted.